United States v. Rene, Ms. Wilson. Good morning, Your Honors, and may it please the Court, Jenny Wilson on behalf of Guerby Rene. The conviction in this case must be vacated. Mr. Rene did not receive a fair trial. He was convicted in a split-verdict case where the government failed to introduce substantial evidence of guilt to carry its burden. The fraud theories that the government relied on were deficient. The government failed to prove materiality as to the misrepresentations, and the government failed in many instances to prove that there was even a misrepresentation that occurred. Well, he said he was a U.S. citizen, and he wasn't, right? That was not a misrepresentation charged in the indictment, and that's precisely the problem. If the jury convicted on that basis, then the conviction must be vacated, as to count three. He said he had employees, but he didn't. Your Honor, two issues. So first of all, I just want to correct what I just said, which was as to count three, it's as to all of the counts. I was starting something about the tax returns. So as to all of the counts, if the jury convicted on the basis of this United States citizen lie, which became a sideshow in this case, in addition to the 404B that was used to prove up an uncharged misrepresentation, then it goes to all three fraud counts. As to your – But didn't it go to – not intent, but didn't it go to show sort of the fact that he was willing to misrepresent certain things in applications? Your Honor, the U.S. citizen question gave a closed option. Are you a U.S. citizen? Yes or no? That's a very simple question, right? You either are or you're not. Well – There's not a gray area, is there? In this instance, there is, because lawful permanent residents are eligible for loans – That's not a U.S. citizen. That is not a U.S. citizen. And it is not a charged misrepresentation in the indictment. So it becomes the possibility that the jury – A lawful permanent resident is not a U.S. citizen. I don't disagree with that, Your Honor. And he said that he – yes, he was a U.S. citizen. And that was not charged in the indictment. I understand that. But it could be brought in as other character evidence. There was no instruction to prove intent. And even if you are going to allow in that with a limiting instruction to then introduce 404B evidence from when he mistakenly tried to vote as a green card holder when he was 18 years old, having come to this country when he was 12, that only – to the extent there is any 404 value that's not outweighed by the unduly prejudicial effect of introducing ample records from his immigration file, that would only go to show the uncharged misrepresentation. And that is part of why this became such a sideshow. Well, that's not all. Okay, so yes. The form requires you to identify your citizenship. He was not truthful, whether he was mistaken or not. Then you have the years that the businesses were established. That was untrue. That these businesses generated substantial revenue, that was not true. That he had employees, that was not true. And then what he actually used the money for, as opposed to what he said he was going to use the money for, was not true. So even the totality of the circumstances are evident. Your Honor, 100 percent disagree that that was not true and that the government proved that those were not truths. And we've addressed that in our briefs. The other issue I want to address, because we are here in the court of... I mean, I guess you addressed it in your brief, but I'd like to hear a little bit more about how all those other things aren't true. Because from my perspective, even if you take out this citizenship point, the evidence is pretty overwhelming here, from what I can tell. Your Honor, the business establishment date, it was a very narrow view that the government advanced at trial of when it was incorporated. When you are a single-member LLC, when you are a solo guy outrunning a business, incorporation is not substantial evidence that the business did not exist before then. And this is where the sufficiency issue dovetails substantially with some of the other trial issues that would go more into the new trial bucket as to the exclusion of essential defense evidence that would have showed the establishment of the business back in the time period, back in 2017, 2016, back in the time period that is consistent in the pre-2020 time period. And this was evidence that the defense had made every effort to produce to the government. They had said, we have this computer. I can export the file. It's just the raw data file. If you and your tech people cannot get this, come look at it. We'll show you these records. The government said that's not good enough. Defense attorneys stood up and said it's literally thousands of screenshots. It's difficult for me to provide. And the district court, rather than granting a continuance, which was also requested by the defense for other reasons, said no, I'm excluding this defense evidence. And that made it very difficult for defense to effectively cross-examine at trial. So all of these errors that we raised in our brief, they really relate and connect to one another because they exacerbate the problems that occurred and the errors that occurred at this trial. And then they also contribute to the sufficiency analysis. When you have several different material misrepresentations that were charged, you have a jury verdict that doesn't specify, and you have extensive trial focus on an uncharged misrepresentation without a limiting instruction, that that cannot be a basis for conviction. So it's where all of these conflate that the issue lies. I mean, and also as to the number of employees, that's something that the Skype records would have established as well. It's not material if they're independent contractors rather than employees. And the government took a very narrow view of employees at trial that was not consistent with the substantial evidence of guilt standard. This was not a PIP loan. In PIP loans, employees are required, more traditional W-2 employees. I don't think it was disputed in the lower court that the terms of these EIDL loans, independent contractors were enough, and the Skype records established that he was working with independent contractors way back when. Those were excluded as a discovery violation. So then one more further point on the... I'm sorry, then in the application, and maybe I missed it, when they ask do you have employees and how many employees you have, you're saying your client misunderstood employee to also cover independent contractors? Or how did that happen, that misrepresentation? So it's not a misunderstanding. It's a non-regulatory tethered, not overly formal view of employee. You know, people that are running a party business, how many employees do you have? I have all these independent contractors that I work with. And there were evidence of others that's in the record that he was working with as to specific events and things like that. So the fact that he was using to help build out an app, to help build out a website, that he was using these employees, that was not a misstatement because the government has a loan program where that is a requirement, and this is not one of them. And again, Your Honor, it goes to materiality. It goes to was this material? And the Supreme Court made clear in Coussis that materiality is an incredibly demanding standard. And the majority described it as a demanding standard, and you had two concurrences that were both saying, I'm not so sure this is material here, is the gist of what Justice Thomas says that outright, and Justice Gorsuch strongly suggests that through hypotheticals. But two justices that went out of their way to write separately to say, even though we're getting rid of the economic loss rule, this is how essential materiality is. And date of incorporation, if you functionally have a business, is not material. The revenues, whether they are in a business account or a personal account, that is not material. Whether employees are independent contractors or employees, that is not. I'm sorry, you're saying if you have business funds that you put in your personal account, when you should have a business account, is not a material fact for purposes of what was your intent with respect to the money? If you, yeah, absolutely. If you are a solo person running a business, you do not always adhere to corporate formalities. So what is material? Because you just listed a lot of things that are not material, but are there any rules that a solo practitioner has to follow? Rules as to, he has to have a legitimate business. Right, but what metrics would you say are material to establishing that he has a legitimate business? Well, I think the materiality inquiry goes to the misrepresentation. So if he doesn't, the government never established that he didn't earn those revenues. The government never established that he didn't work with six people as represented. So it goes to what did he have to establish, and what was the purpose of extending the loan? It's the heart of the bargain. The government, and I think the 30,000 foot up view is useful here as well, because this was a frenzied government assistant program that was designed to get money to small businesses, to precisely the types of people like Rene who did not have sort of formal corporate structures. It was keep small businesses running, and he's somebody who's in the entertainment and events industry. You're running out of time, so I just wanted to ask you quickly about the laws. It does seem that our case law is really clear that intended laws can be held against a defendant, but you're arguing against that. How are you trying to get around our case law, which otherwise seems to foreclose your argument? Your Honor, I think given that I am running out of time, we'll mostly rest on our briefs on that, but it relates again to proof and whether they met the proof burden at sentencing. Right, but isn't it foreclosed by Horn, the intended laws? As a general principle, but whether or not they proved it in this specific case as to that amount I think is disputed. Thank you. Thank you. Ms. Cohen. May it please the court. Alex Cohen for the United States. With me at council table is Eli Rubin who tried the case below. Ms. Cohen, can you address the issue regarding the immigration documents that were introduced into evidence? Sure. The district court did not abuse its discretion in admitting six documents from Rene's immigration file. Some of those documents showed inconsistent statements were being made in the immigration. I mean, they were clearly prejudicial, but that doesn't necessarily mean that they were inadmissible, so if you could address that. Yeah, so to start with the probative value. Some of them were probative because they showed that Rene was making inconsistent statements in his immigration proceedings from what he was saying in his EIDL loan applications. As an example, Government Exhibit 69 is a document he filed in his immigration proceedings the same exact day as he submitted the Excel booking EIDL modification application. So on the same day as he was requesting over $600,000 in loans for Excel booking, in his immigration document, he doesn't even list Excel booking as an employer. Another example in that same document in his EIDL modification application, he lists $13 million in assets. In the immigration form, he lists zero in assets. So there's another immigration document as well that shows in 2017 he lists his employers and he doesn't include 365 Live, even though in his EIDL applications, he puts that he founded 365 Live in 2015. So they show that the statements in the EIDL applications were not true because Rene's own statements in his immigration proceedings were contradictory. Some of the documents also show lack of mistake when he checked U.S. citizen on the EIDL application form. He argued that there was confusion in the form because there wasn't a box to select permanent resident, but the documents show that he knew he was not a U.S. citizen. So, for example, the court's March 2022 order on inadmissibility, where a judge found that he made a false claim of U.S. citizenship in order to obtain a benefit, that was before the April 2022 EIDL modification application, which was count three. So he knew before recertified and he was a U.S. citizen, he had already been found to have lied about citizenship in the past. The defense did not request a limiting instruction to be given, so they can't show plain error on that grounds. And also the prejudice was reduced because the government did redact the records. The government redacted the fact that he had voted illegally in an election. The defense chose to elicit that on cross. The government did not bring that out. And also there was no suggestion here that he was here unlawfully. It was clear that he was a legal permanent resident, and I think that mitigated prejudice as well. In response to the defense's argument that the convictions could have been based on the citizenship lie, there was no indication to support that in the record. In closing argument, when the government outlined the elements for wire fraud and talked about which misrepresentations were material, the government says gross revenues and cost of goods sold were critical factors for determining whether a loan was issued and for how much. And the government also emphasized that the number of employees was critical for determining an EIDL advance. But the only references in closing to the citizenship issue were when discussing intent. Intent in terms of the misrepresentations? Correct. I have a question. Why shouldn't we accept Rene's more expansive definition of employee? He's saying that he had independent contractors working for him and presumably that he was paying to do work for him, so why isn't that sufficient to satisfy that requirement for the application? He claims that on appeal, but the record doesn't support that. So even in Rene's own tax documents that we submit are fraudulent, but the tax documents that he submitted with his EIDL modification application, he selects that he has no independent contractors in the 2019 tax returns and the 2020 tax returns. So the record doesn't support his claim that he had independent contractors. They also say that the reason why the record doesn't show some of these things is because the district court abused its discretion in not allowing some of these documents to be admitted. What was the problem with just allowing him to admit these documents so that the government could review them and then he could have a more fulsome defense? So a few points in response to that. The first, I want to address the basis for the district court's ruling, and then second, why the error was harmless and the records don't really show that he had employees or independent contractors. For the first point on the merits of the district court's ruling, the district judge excluded certain documents as a violation of his own discovery order. So the court issued an order to compel, compelling the defense to produce all reciprocal discovery by the day before calendar call. And the court determined that on that date, when the defense produced the documents in an unreadable format, that was not compliance with its order. So given a district court's broad discretion over discovery matters, we don't think that the district court abused its discretion when it determined that the defense did not comply with its order, compelling them to produce all reciprocal discovery, when they then produce it in an unreadable format. I mean, we just heard that the government was offered an opportunity to come to the office or otherwise have access so that they could read them or otherwise access them. What's wrong with that request in terms of just a simple grant? So under Rule 16, it is true that an offer to inspect can satisfy the rule, but a district court can also vary the requirements of the rule. And in this case, when the government moved to compel, the government requested production of the documents, not inspection. And in the court's order, the language used in the court's order is that the defense has to produce all reciprocal discovery. Produce has a different meaning than inspect. Produce is defined as to provide or to physically turn over the documents. And so the court was free to determine that the defense didn't comply with its order, even if it would have met the requirements of Rule 16 because it had ordered more. Rule 16 itself and the local rule, 8810.06, allows a court to modify the time, place, and manner of discovery, and that's what the court did here. In any event, any error in the district court's ruling was harmless. The government actually filed the records that were excluded under seal as docket entry 104 with our response to the new trial motion. So the records do not show that the businesses had employees or that the businesses were established. Many of the records don't even pertain to the businesses at issue in the indictment, or they show revenues from 2021 to 2024, which is outside the measuring period. The very few documents that do pertain to these businesses during the relevant time period show that Rene had the idea for the businesses, but not that it was established. So, for example, there's some e-mails where he attempts to purchase the domain name for 365 Live in 2016 or 2017, but there's other e-mails showing his offer was rejected and he doesn't actually acquire the website until 2019. There are also some Skype messages with third-party vendors where he's discussing the creation of an app for 365 Live, but then there's messages in 2019 where he's expressing frustration that the app had not been developed. So the records would not have shown that there were employees or the business was established, and most critically, they would not have shown revenues during the measuring period. The entire basis for the formula for obtaining EIDL loans was revenue minus cost times a multiplier. He lied about the revenues, he lied about costs, and that was the reason he was issued these loans. Another point I want to add for harmlessness is that Rene did have an opportunity to present his theory of the case here. His theory was that he had 2019 revenues in his personal accounts. He put on his bank account statements from his personal accounts as did the government. They're in the government's exhibits 54, 55, and 80, and he argued to the jury that those personal accounts showed revenues, but the jury was not persuaded by that theory. If the court has any other questions, I'm happy to address them. If there are none, the government will rest on its brief. Thank you. Thank you. Ms. Wilson, you've reserved five minutes. Thank you. Your Honor, the government, when they stood up here, was arguing the facts as to what defense-proposed exhibits would have shown. Often defense sees the significance of different things in the record than the government does. The trial record is certainly not developed fully enough for a ruling that we would not have used these Skype records effectively. Now to move into the discovery issue. What do you say the records show that your friend on the other side suggests they don't? They show that 365 Live existed prior, back when he said it existed. How do they show that? Because he was having communications with people about developing an app for the business. And again, it's this narrow view. A business is not just an app. There's multiple features of a business. So he's out. He has 365 Live. He's got the business idea. The reason we're here is because this was a situation where the government was trying to provide loans to companies to keep them afloat. So one of the requirements was you have employees. Because those employees need to be able to feed their families and need to be able to sustain during the pandemic. So having an idea is not the same as having employees. Isn't that what one of the requirements was for the loan? It was that he was working with developers, Your Honor. And I would refer it for the court back because the trial counsel went into this in depth as to what these records showed at the calendar call. And then again, during the trial, I believe the trial day is Docket Entry 88, but it did come up a few repeatedly. I think it's cited in our briefs. Docket Entry 130 is the calendar call. Also, as to the discovery violation issue where there was none here, the government referenced correctly the standard is abuse of discretion. But the case law is also clear that – and this is case law that is used against the defense often. When the government dumps on us before trial large portions of discovery, it says it's the least restrictive remedy. Its exclusion is the top. And the appropriate route here, particularly given that the government had also provided thousands of pages of Brady in the days leading up to trial, and particularly given that the defense had requested a continuance anyway, would have been a continuance. And then the trial counsel would have been able to demonstrate why all of these records contradicted the government's notion that this business didn't exist. And that's the other thing. It's impeachment of government credibility because the government was saying this business did not – it was a fraudulent business. It did not exist at all before 2020. These records clearly contradict that. And when you're dealing with a trial in front of a jury, that's the kind of impeachment that can make a really big difference. This business did exist. Also, Your Honor, we cited Yates in our brief, and I just want to emphasize that when the government charges multiple material misrepresentations in a single count and there is no special verdict, if not a single one – if a single one cannot sustain the verdict, then the conviction must be vacated. And we particularly have that here with the way that this – the government, once it realized the defense mid-trial, shifted into this loan documents say only alleviate economic injury. And the government said, I believe, in closing, you can't use this to pursue a new idea. That is a strangled view of business. If you're in the events business, if you're in the party business during a global pandemic, your business has to shift. So it's this post hoc regulation through the criminal fraud statutes. On the immigration point, introducing the judgment of another body in the manner that it was done here violates United States versus Sarando. It was not only used to illustrate discrepancies, even though the immigration documents, as the government pointed out, I think one mentioned 365 live, but perhaps not Excel booking. It was used to say, oh, look, he lies all the time. He lies about his citizenship. It was used to support a propensity theory. There is no material misrepresentation as to if he lists one business, but not the other, in an immigration application. It became a huge sideshow on this issue. And again, it only could have supported an alleged misrepresentation that was not alleged in the indictment. It just distracted from the charges way too substantially. And that is what led to substantial prejudice here, particularly when combined with the late disclosure of Brady evidence that the defense would have used to rebut the government's theory and with the exclusion of defense evidence that the trial record is clear. The defense wanted to, made every effort to, and intended to rely on in its case in chief. So for all of those reasons, Your Honor, we would ask that the conviction be vacated, whether it is due to the cumulative error and how all of these relate. And I think that that's a point worth seeing over time. Thank you.